IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JENNIFER McNICHOLS,

    **Plaintiff,**

                                  Civil Action 2:12-cv-1068
    v.                          Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Jennifer McNichols, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the Court for consideration Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 9). For the reasons that follow, the Commissioner of Social Security's nondisability finding is **REVERSED** and this action is **REMANDED** to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.     BACKGROUND

**A.     Procedural Background**

Plaintiff protectively filed her applications for benefits on April 23, 2009, alleging that she has been disabled since January 1, 2009, at age 27.  (R. at 139-45, 146-49.)  Plaintiff alleges disability as a result of degenerative disc disease, depression, and carpal tunnel syndrome.  (R. at 178.)  Plaintiff's applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  Administrative Law Judge Ken B. Terry ("ALJ") held a video hearing on May 27, 2011, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 36-58.)  Barry J. Brown, a vocational expert, also appeared and testified at the hearing.  (R. at 59-65.)

On June 22, 2011, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 16-25.)  At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since January 1, 2009.  (R. at 18.)  The ALJ found that Plaintiff had the severe impairments of

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

fibromyalgia, headaches, diabetes mellitus type 2, morbid obesity, degenerative disc disease of the lumbar-sacral spine, carpal tunnel syndrome, elbow pain status post surgery, depression, and anxiety. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 19.) At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC"). The ALJ found:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can lift and/or carry and push and/or pull a maximum of 20 pounds occasionally and 10 pounds frequently; sit for four hours at a time and a total of eight hours in an eight hour work day; and walk and/or stand up to two hours at a time and a total of six hours in an eight hour work day. The claimant is precluded from climbing ladders, ropes, or scaffolds; more than occasional climbing of ramps and stairs; and more than occasional balancing, stooping, kneeling, crouching or crawling. The claimant is further precluded from more than frequent (up to two thirds of the day) handling and fingering. The claimant is further limited to simple, unskilled, repetitive work in environments without fast-paced work or strict production quotas.

(R. at 20.) In reaching this determination, the ALJ assigned "some but limited weight" to the opinion of treating physician Dr. Sardo and "considerable weight" to the opinions of reviewing physicians Drs. Bolz and McCloud. (R. at 23.) The ALJ assigned "some weight" to the psychological opinion of the consultative examiner, Dr. Miller, finding his assessments generally consistent with the record. (*Id.*) The ALJ afforded "significant weight" to the opinions of the state-agency psychologists, noting that their opinions were generally consistent with the record. (*Id.*) The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the limitations he set forth in Plaintiff's RFC. (R. at 21.)

Relying on the VE's testimony, the ALJ determined that jobs exist in significant numbers in the state and national economy that Plaintiff can perform. (R. at 24-25.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 25.)

On September 27, 2012, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-3.) Plaintiff then timely commenced the instant action.

**B.      Plaintiff's Statement of Errors**

In her Statement of Errors, Plaintiff first submits that the ALJ erred in his consideration and assessment of her "pain disorder with psychological factors and medical condition" as diagnosed by Dr. Miller. (Pl.'s Statement of Errors 15, ECF No. 10.) Plaintiff also contends that the ALJ erred in his consideration and assessment of her morbid obesity. In her final contention of error, Plaintiff maintains that the ALJ erred in failing to properly consider and weigh the medical opinion evidence of her treating counselor. Within this final contention of error, Plaintiff asserts that the ALJ failed to properly assess all of the medical records concerning her mental impairments such that he also "failed to properly assess her credibility with respect to her symptoms, complaints, and limitations." (Pl.'s Reply 7, ECF No. 14.)

The Court agrees that the ALJ erred in his assessment of Plaintiff's mental impairments such that the Court cannot conclude that substantial evidence supports his residual functional capacity formulation and nondisability finding. This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error. Thus, the Court need not, and does not, resolve Plaintiff's alternative assertions of error. Accordingly, the Court will focus its review on the relevant evidence relating to Plaintiff's mental impairments.

### C.     Relevant Hearing Testimony

At the May 27, 2011 hearing, Plaintiff testified that she is 5'2" and weighs 256 pounds. (R. at 36.)  She indicated that she had last worked as a janitor at a local school district and stopped working in January 2009 due to her back pain.  (R. at 37.)  Plaintiff testified that her depression, among other problems, prevents her from working.  (R. at 41.)  She said she feels sad a lot and cries every day, sometimes the entire day.  (*Id*.)  Plaintiff added that she "like[s] to just . . . clam up in [her] shell away from everybody" and that she isolates herself approximately ninety percent of the time.  (*Id*.)  When asked about her children, Plaintiff testified that she needs to take breaks after being with them and that she fights with her daughter on a daily basis.  (R. at 42.)  Plaintiff also indicated that she gets moody and agitated easily such that she could "be fine one minute and then the next minute the least little thing will just set [her] off."  (*Id.*)

Plaintiff also testified that she is "lucky" to get three or four hours of sleep per night and that she does not nap.  (R. at 46.)  She said she occupies her time with her kids, reading, or laying in her recliner and is "pretty much house bound."  (R. at 46-47.)  She also indicated that she does small loads of laundry, some light housecleaning, and can cook small meals and dishwash by hand.  (R. at 48-49.)  She added that she can take care of her own personal care such as shaving, showering and bathing.  (R. at 49.)  Plaintiff represented that she takes Lyrica and Cymbalta for her back pain and depression symptoms.  (R. at 51.)

Barry Brown testified as the vocational expert ("VE") at the administrative hearing.  (R. at 59-65.)  The ALJ proposed a series of hypotheticals regarding Plaintiff's residual functional capacity to the VE.  Based on a hypothetical that mirrored the limitations the ALJ ultimately set forth in his RFC formulation and applied to an individual of Plaintiff's age, education, and past

work experience, the VE testified that the individual could not perform Plaintiff's past relevant work, but would be able to perform a number of light, unskilled jobs, including machine tender, with 5,500 local jobs and 100,000 nationwide; inspector, with 3,200 local jobs and 65,000 nationwide; and merchandise marker, with 13,000 local jobs and 300,000 nationwide.  (R. at 61-64.)  The VE further testified that if the individual was off task twenty percent of the day or missed two or more days of work per month, she would not be able to work competitively.  (R. at 65.)

**D.     Relevant Medical Records**

The record reflects that Plaintiff obtained treatment at Pickaway Health Service from at least July 24, 2004, to November 9, 2010.  (R. at 558-648, 691-726, 752-96.)  On November 6, 2007, the nurse practitioner noted Plaintiff's history of depression for three years off and on.  Plaintiff reported that she slept poorly and was tearful.  Celexa, an antidepressant medication, was prescribed.  (R. at 574.)  When seen on November 27, 2007, to discuss her blood sugar log, the nurse practitioner assessed depression/anxiety and sleep disturbance. (R. at 570.)  On March 28, 2008, Plaintiff complained of mid- and low-back pain and "crying at anything."  She reported that the Celexa was not helping and that she was not sleeping.  The nurse practitioner discussed the importance of keeping her blood sugars in line and gave Plaintiff samples for a different antidepressant medication, Effexor.  (R. at 566.)  When seen for follow-up on April 23, 2008, Plaintiff reported that the Effexor was working well.  On May 11, 2009, the treatment notes reflect that Plaintiff reported "back pain all the time," that she had stopped working, that she "cannot stand pain," and that she was "miserable."  (R. at 558.)  The record reflects that

Plaintiff continued to complain of depression, among other issues, through November 2010. (R. at 691-96, 752-74.)

Plaintiff treated with physical medicine and rehabilitation specialist Dr. Sardo from February 2010 to at least February 2011. On April 12, 2010, Plaintiff complained of insomnia and fatigue. On December 13, 2010, Plaintiff noted that she was trying to reduce her stress levels.

Dr. Miller examined Plaintiff on behalf of the state agency on July 13, 2009. (R. at 649-54.) Plaintiff presented as depressed and reserved. (R. at 650.) Plaintiff reported experiencing difficulty with anxiety and depression for the prior seven years as well as outbursts, withdrawal, and moodiness. (R. at 650.) She further indicated that she did not have a history of psychiatric hospitalizations or mental health treatment. (*Id.*) Dr. Miller placed Plaintiff's depression at a level between 6/7 out of 10 and her anxiety at a level 6 out of 10. (R. at 651.) Dr. Miller noted that Plaintiff exhibited facial grimaces and nail biting behavior. (*Id.*) Plaintiff reported crying behavior although Dr. Miller did not observe crying during the evaluation. Plaintiff also reported passive suicidal thoughts, poor energy levels, and fatigue, as well as difficulty with mind racing, worry, and pain. Dr. Miller found Plaintiff's insight and judgment "good," her social adaptation "fair," and her self esteem, motivation, and coping skills "poor." (*Id.*)

Dr. Miller diagnosed Plaintiff with a dysthymic disorder (moderate to severe); a generalized anxiety disorder (moderate); and a pain disorder with psychological factors and medical condition. (R. at 653.) He assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55.[2] (*Id.*) Dr. Miller found Plaintiff to possess "adequate intelligence" and

---

[2] The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating

7

concluded that she had no impairment in her "ability to understand, remember, and carry out routine job instructions." (R. at 652.) He further found that Plaintiff was mildly impaired in her ability to maintain attention and concentration and moderately impaired in her ability to persist in task completion and to "interact with co-workers, supervisors, and the public . . . due to her anxiety, depression, [and] agitation." (*Id.*). Finally, Dr. Miller opined that Plaintiff's "ability to deal with stress and pressure, in a work setting, indicates marked impairment [because] she has poor coping skills and tends to internalize a great deal." (*Id.*)

In July 2009, Dr. Swain, a state-agency psychologist, reviewed the medical record and assessed Plaintiff's mental condition. (R. at 655-72.) Dr. Swain found Plaintiff had a moderate to severe dysthymic disorder, a moderate generalized anxiety disorder, and a "pain disorder [with] psychological factors and medical condition." (R. at 658, 650, 661.) Dr. Swain found that Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. at 665.) Dr. Swain also found that the evidence did not establish the presence of the "Part C" criteria. (R. at 666.) In the check-the-box portion of the assessment, Dr. Swain found that Plaintiff was moderately limited in the following areas: the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal workday and workweek without

---

whether the individual is functioning at the higher or lower end of the range. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33–34 (American Psychiatric Association, 4th ed. text rev. 2000) (DSM-IV-TR). A GAF score of 55 is indicative of "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." DSM-IV-TR at 34.

8

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism with supervisors, and the ability to respond appropriately to changes in the work setting. (R. at 669-70.) In the narrative portion of the assessment, Dr. Swain noted that Plaintiff's statements were credible. She also noted Dr. Miller's opinion that Plaintiff would have marked limitations in stress tolerance, but concluded that the marked limitations were not supported by the medical evidence or Plaintiff's reported activities of daily living. Dr. Swain therefore assigned "only partial weight" to Dr. Miller's opinion. Dr. Swain opined that Plaintiff "would be capable of performing simple and moderately difficult tasks in a work environment that does not have strict production quotas." (R. at 671.) On January 9, 2010, state-agency psychologist Dr. Lewin affirmed Dr. Swain's assessment. (R. at 727.)

Plaintiff received treatment at Scioto Paint Valley Mental Health Center from March 2010 until at least April 2011. (R. at 315-18, 739-51, 825-34.) Plaintiff reported that her depression started six or seven years prior when her grandmother died and that she had struggled since. She indicated that she felt discouraged by her physical condition as she had injured her back. She further indicated that she was able to function and complete her daily activities but that she did not have the energy to do these activities. She also reported that she did not sleep well at night. The intake clinician diagnosed Plaintiff with major depressive disorder and assigned her a GAF score of 54. (R. at 733-38.) Clinical notes reflect ongoing problems with anxiety, depression, lack of energy to do things, and interpersonal problems. (R. at 315-18, 739-

51, 825-34.) In July 2010, Plaintiff reported that Cymbalta helped relieve her depressive symptoms. (R. at 745.)

Plaintiff's counselor, Trisha Campbell, L.I.S.W., completed a Mental Medical Source Statement on January 4, 2011. Ms. Campbell reported that Plaintiff was "severely depressed," struggling with daily functioning, and that her medications had been only "minimally effective." (R. at 309.) Ms. Campbell listed Plaintiff's symptoms as anhedonia, appetite disturbance, decreased energy, feelings of guilt or worthlessness, difficulty thinking or concentrating, emotional withdrawal or isolation, memory impairment, sleep disturbance, and a history of multiple physical symptoms. (R. at 310.) She found that Plaintiff was "seriously limited, but not precluded," in the following areas: ability to remember work-like procedures, ability to understand and remember very short and simple instructions, ability to carry out short and simple instructions, ability to maintain regular attendance and be punctual within customary tolerances, ability to sustain a daily routine without special supervision, ability to work in coordination with or proximity to others without being unduly distracted, ability to make simple work related decisions, ability to ask simple questions or request assistance, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and ability to interact appropriately with the general public. (R. at 311-12.) Ms. Campbell further concluded that Plaintiff was "unable to meet competitive standards" in the following areas: ability to maintain attention for two-hour segment, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, ability to perform at a consistent pace without an unreasonable number and length of rest periods, ability to respond

appropriately to changes in a routine work setting, ability to deal with normal work stress, and ability to be aware of normal hazards and take appropriate precautions. (*Id.*) With regard to stress tolerance, Ms. Campbell identified the following work demands that Plaintiff would find stressful: speed, precision, complexity, exercising independent judgment, getting to work regularly, and remaining at work for a full work day. (R. at 313.) Ms. Campbell anticipated that Plaintiff would miss more than four days per month from work due to her psychological impairments. (R. at 313.)

On April 19, 2011, Plaintiff's counselor noted that Plaintiff was able to be employed, but "lacks the motivation." She questioned Plaintiff's diminished ability to work due to her health problems and encouraged her to get out of the house, visit family and friends, stop procrastinating, and stop feeling sorry for herself. The counselor noted that Plaintiff demonstrated a "normal range" of findings on her mental status examination. (R. at 825.) Treatment intervention included encouraging Plaintiff to take responsibility for her choices and remain open to considering change. (*Id.*)

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Univ. Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III.   ANALYSIS

As set forth above, the Court concludes that the ALJ erred in his evaluation and assessment of Plaintiff's mental impairments, including his assessment of Plaintiff's credibility concerning the limiting effects of these impairments.

As set forth above, the ALJ found that Plaintiff's impairments, including her severe impairments of depression and anxiety, "could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting

effects of these symptoms are not credible to the extent they are inconsistent" with the RFC he set forth.  (R. at 18, 21.)  The ALJ included the following RFC limitations relating to Plaintiff's mental impairments: "[Plaintiff] is further limited to simple, unskilled, repetitive work in environments without fast-paced work or strict production quotas."  (R. at 20.)  In formulating this RFC, the ALJ accorded "significant weight" to assessments of state-agency reviewing physicians Drs. Swain and Lewin.  (R. at 23.)  Consistently, the limitations set forth in his RFC mirror those Drs. Swain and Lewin found.  In connection with her RFC assessment, Dr. Swain noted that Plaintiff did not have any history of treatment for her mental impairments.  (R. at 671.)  The ALJ considered and accorded Dr. Miller's opinion "some weight."  (R. at 23.)  The ALJ noted that Dr. Miller had opined that Plaintiff "had no impairment in . . . interacting with others" and "marked impairment in withstanding stress."  (*Id*.)  The ALJ explained that he discounted Dr. Miller's opinion because Plaintiff's "activity level and very limited mental health treatment suggest that she has less than marked limitations in dealing with work stresses."  (*Id*.)  Finally, the ALJ cited some of the treatment notes from Scioto Paint Valley Mental Health Center in support of his RFC determination.  Specifically, he cited notations from Plaintiff's counselor that indicated Plaintiff had the "ability to be employed but lacks the motivation" and that she had the capability to function and complete daily activity, but no energy.  (R. at 22.)

      The Court cannot conclude that substantial evidence supports the ALJ's evaluation and assessment of Plaintiff's mental impairments and his assessment of her credibility regarding the limiting effects of those impairments because he misstated important evidence and failed to consider other evidence.  Specifically, the ALJ failed to consider the medical evidence in Exhibit 22E, which, significantly, contained a medical source statement from Plaintiff's treating mental

health counselor, as well as some of her progress notes.[3] The ALJ also misstated portions of Dr. Miller's opinion.

For a number of reasons, the Court concludes that the ALJ failed to consider the medical evidence in Exhibit 22E. Most obviously, there is no mention of *any* of the evidence contained in Exhibit 22E anywhere in the ALJ's decision.[4] This omission is problematic because portions of the Exhibit 22E evidence support the limitations that Plaintiff alleged and/or that Dr. Miller opined, but that the ALJ rejected. For example, the ALJ concluded that Dr. Miller's opinion that Plaintiff had marked impairment in withstanding stress was unsupported, citing Plaintiff's limited mental health treatment and her activity level. The evidence contained in 22E, however, undermines the ALJ's stated reasons. Specifically, contrary to the ALJ's conclusion that Plaintiff had "very limited mental health treatment" (R. at 23), Plaintiff's counselor, Ms. Campbell, noted that Plaintiff had attended mental health counseling "at least every other week" for nearly a year and was continuing counseling. (R. at 309.) Counselor Campbell also noted that Plaintiff "struggles [with] daily functioning" and opined that she was "[u]nable to meet competitive standards" in "[d]eal[ing] with normal work stress." (R. at 309, 311.) The ALJ's discussion and reliance upon random progress notes from Scioto Paint Valley Mental Health Center also supports the Court's finding that the ALJ did not review or consider the evidence in Exhibit 22E. The ALJ cited only excerpts from treatment notes contained in Exhibits 16F and 22F. Although the assessment contained in Exhibit 22E would have clarified some of the

---

[3]The ALJ's oversight is likely attributable to the fact that these records were not initially included and then subsequently filed under the "E" files with non-medical exhibits. (R. at 279-320.)

[4]In addition to the medical source statement and progress notes from Plaintiff's treating mental health counselor, Exhibit 22E contains records from Adena Bone & Joint and Dr. Sardo.

14

ambiguity in the notations upon which the ALJ relied, he did not mention, let alone discuss the assessment. Finally, the circumstances surrounding the submission and filing of Exhibit 22E likewise supports the Court's conclusion that the ALJ failed to consider the Exhibit. In particular, the records contained in Exhibit 22E were not initially included in the exhibits and were subsequently incorrectly filed under filed under the "E" files with non-medical exhibits (instead of correctly filed with the medical "F" files). (R. at 279-320.)

The Court rejects the Commissioner's assertions to the contrary. That 22E is listed as one of the exhibits in an attachment to the Decision is unpersuasive in light of the foregoing discussion, especially given that the exhibit is incorrectly catalogued as "Representative Correspondence." (R. at 28.) Second, contrary to the Commissioner's assertion, the Appeals Council did not find Plaintiff's allegation that the ALJ had failed to consider Exhibit 22E without merit. (*See* Comm'r Mem. in Opp. 14-15, ECF No. 13.) Rather, the Appeals Council stated as follows: "We also considered the medical evidence that was misfiled in Exhibit E. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. at 1-2.) Thus, the Appeals Council did not make a determination concerning whether the ALJ had considered the evidence in Exhibit 22E in rendering his nondisability finding. Instead, the Appeals Council merely noted that the ALJ would not have altered his decision had he considered the evidence contained in the exhibit.

The ALJ's failure to consider the medical evidence contained in Exhibit 22E undermines his credibility assessment. "The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). Here, the ALJ's credibility determination is not "based on a consideration of the entire record" given that the ALJ failed to consider the evidence contained in Exhibit 22E.

The ALJ also erred in his assessment of Dr. Miller's opinion. Contrary to the ALJ's assertion that Dr. Miller opined that Plaintiff "had no impairment in . . . interacting with others" (R. at 23), Dr. Miller opined that Plaintiff's "ability to interact with co-workers, supervisors, and the public indicate moderate impairment due to anxiety, depression, and agitation." (R. at 652.) Consistently, Plaintiff testified that she isolates herself ninety percent of the time, that she is moody and easily agitated, and that she fights with her daughter on a daily basis. (R. at 41-42.) Plaintiff's treating counselor, Ms. Campbell, likewise opined that Plaintiff was "seriously limited" in her ability to interact appropriately with supervisors, co-workers, and the general public. (R. at 311-12.) Significantly, the RFC formulation did not include any limitations in Plaintiff's ability to interact with supervisors, co-workers, or the general public.

In her Memorandum in Opposition, the Commissioner urges the Court to find no "serious legal error" and proceeds to attack various opinions Counselor Campbell advanced in her assessment. (*See* Comm'r Mem. in Opp. 17-18, ECF No. 13.) Plaintiff also contends that the

opinions of the state-agency physicians, alone, provide a basis for finding that substantial evidence supports the ALJ's nondisability determination.  The Sixth Circuit has held that "even if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."  *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).  Under the circumstances presented here, the Court cannot conclude that the ALJ's errors are harmless.  Many of the opinions Counselor Campbell advanced in her assessment are consistent with and support the limitations that Dr. Miller found and Plaintiff alleged.  As set forth above, the ALJ did not account for some of these limitations in his RFC determination.  The Court declines to accept the Commissioner's invitation to weigh Counselor Campbell's opinions given that "the ALJ, and not the reviewing court, [must] evaluate the credibility of witnesses, including that of the claimant."  *Rogers*, 486 F.3d at 247 (citing *Walters*, 127 F.3d at 531; *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)).  Further, in light of the ALJ's failure to consider the evidence contained in Exhibit 22E, his reliance on Drs. Swain and Lewin, alone, does provide substantial evidence here because they rendered their opinions without the benefit of records from Scioto Paint Valley Mental Health Center or Plaintiff's testimony.

In sum, in light of these errors, the Court cannot conclude that substantial evidence supports the ALJ's consideration and evaluation of Plaintiff's mental impairments, his RFC formulation, or his ultimate finding of nondisability.

## IV. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the Commissioner of Social Security's nondisability finding is **REVERSED**, and this action is **REMANDED** to the Commissioner under Sentence Four of § 405(g) for further consideration consistent with this Opinion and Order.

**IT IS SO ORDERED**.


Date: March 18, 2014                                         /s/ *Elizabeth A. Preston Deavers*
                                                                                                                                        Elizabeth A. Preston Deavers
                                                                                                                                       United States Magistrate Judge